UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-22890-CIV-MOORE/MCALILEY

NIURKA ESTRELLA,

    Plaintiff,

vs.

CAROLYN COLVIN, COMMISSIONER
of SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion for Summary Judgment [DE 20], and Defendant's Motion for Summary Judgment. [DE 21]. The Honorable K. Michael Moore referred the motions to me and they are fully briefed. [DE 3, 23]. For the reasons set forth below, I recommend that the Court grant Plaintiff's motion and deny Defendant's motion.

### I. Overview

Plaintiff applied for disability insurance benefits and supplemental security income on November 15, 2011, alleging an onset of disability on January 15, 2010. Tr. 209-18.[1] Her application was initially denied on January 13, 2012, and on reconsideration on February 2, 2012. Tr. 118-29, 137-48. Plaintiff requested a hearing before an

---

[1] Citations to the transcript of proceedings before the Social Security Administration, which was filed at DE 14, are to "Tr. [#]".

1

Administrative Law Judge (ALJ), which took place on November 4, 2013, and at which Plaintiff and Steven Bast, a vocational expert, testified. Tr. 37-61, 153-5.

On February 3, 2014, the ALJ issued a decision finding that Plaintiff is not disabled. Tr. 18-31. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 1-11, making that decision the final decision of the Commissioner. Plaintiff now asks this Court to either remand the matter to the ALJ for an award of benefits, or alternatively remand with instructions for the ALJ to re-evaluate Plaintiff's disability claim in light of the remand order. [DE 20, p. 23].

## II.   Proceedings before the Commissioner

### A.   Plaintiff's testimony[2]

Plaintiff was born in Cuba and came to the United States in 1995. Tr. 42. She is a United States citizen, having passed the United States citizenship exam, in English, about five years ago prior to the hearing. Tr. 43. She testified that she understands written English, but speaks little English. Tr. 43. Plaintiff went to medical school in Cuba at Havana University and is a medical doctor. Tr. 49. She lives with her two teenage daughters and her partner.[3] Tr. 43. On a typical day Plaintiff begins the day by helping her daughters ready for school. *Id.* Her partner drives them to school because Plaintiff has not been driving. *Id.* She goes with him and then returns home. Plaintiff spends the day lying down of the sofa or the bed. Tr. 44.

---

[2] Plaintiff testified with the assistance of a Spanish interpreter.

[3] At various times during the hearing, the interpreter translated Plaintiff as referring to her partner as her "mate", her "husband" or her "boyfriend." The record is not clear regarding their legal relationship. For the sake of consistency, the Court uses the term "partner."

2

The day before the hearing, Plaintiff went to Kendall Hospital for electric shock therapy. Tr. 44. It was her sixth session of electric shock therapy. Tr. 45. She then returned home to go with her partner to pick up her daughters. Tr. 44. Her partner prepares dinner, and her daughters help her with the laundry. Tr. 44. Her daughters and her partner clean the house. Tr. 52. Although she showers and dresses herself, Plaintiff has lost interest in doing so. Tr. 44.

Plaintiff takes Cymbalta, Abilify, Alprazolam, Temazepam, Hydroxyzine Pomoate, Percocet, Flexeril, and Topiramate. Tr. 45-6. At the time of the hearing, Plaintiff had not worked for 5 years. Her last job was translating patient charts from English to Spanish with the help of a dictionary, although she was fired her because she did not have sufficient knowledge of the English language. Tr. 46-7. After leaving that position, Plaintiff underwent gastric bypass surgery. Tr. 47. Because of her depression, she had not searched for work in the prior four years. *Id.*

She began treatment with a psychiatrist for depression a number of months after she was fired. Tr. 48. Her symptoms include lack of sexual drive, loss of interest, lack of concentration, impaired memory, shaking, tremors, anxiety, panic attacks, and fatigue. Tr. 48. She experiences up to three panic attacks a week and they last about 10 minutes. *Id.* Plaintiff maintains a blog about Cuban politics that she updates daily; the updates take a few minutes. Tr. 52-3.

Physically, Plaintiff suffers from back pain in the sacral lumbar area. The pain radiates downward to the legs, causing numbness, and making it difficult for her to squat. Tr. 50. Without pain medication, her pain is at an 8.5 on a scale of 10; with the

3

medication, it is a 6 or 7. Tr. 51. She can walk for one block, and stand in a fixed position for five minutes before her leg pain forces her to move. *Id.* She cannot pick objects off the floor, or pick up anything heavier that a paper file. Tr. 52.

The ALJ questioned Plaintiff about a report prepared by a consultative physician, who examined Plaintiff and opined that she was exaggerating her physical symptoms. Tr. 49. Plaintiffs testified that the consultant did not conduct any diagnostic tests or, to her knowledge, review any of her medical records. Rather, he performed a cursory physical exam that lasted less than five minutes. Tr. 49-50.

### B. The Vocational Expert's (VE) testimony

At the hearing, the ALJ asked the VE to assume a hypothetical person who was

> a person of the Claimant's age, education, and work history. Further assume that this individual has the residual functional capacity to perform a partial range of light work. Specifically assume the individual can lift, carry, push or pull up to 10 pounds frequently and 20 pounds occasionally; the individual can sit for up to six hours total in an eight-hour workday. She can stand and walk for up to six hours total in an eight-hour workday. The individual can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. The individual can occasionally stoop, kneel, crouch or crawl.
>
> The individual is limited to occupations in which she would not be exposed to workplace hazards that include but are not limited to working in proximity to moving mechanical parts, working in proximity to high exposed places, or working around other hazards that are not readily apparent. The individual is further limited to the basic demands of unskilled work, and by that I mean an individual who can understand, remember and carry out short and simple instructions. The individual can respond appropriately to supervision. The individual can interact appropriately with coworkers, and she can respond to changes in routine work settings.
>
> This individual is further limited to occupations involving not more than occasional interaction with supervisors, coworkers or the public.

>And lastly, the individual is limited to occupations in which the principle measure of performance is not based on production quotas or production goals.

Tr. 56-7. The VE testified that a hypothetical person with these limitations would not be able to do Plaintiff's prior work; but could be employed in unskilled jobs that exist in Florida and the national economy. Tr. 57-8. However, if the hypothetical person could be expected to miss more than one day of work a month, this would place her "into the almost unemployable zone . . . ." Tr. 59.

In response to questioning by Plaintiff's attorney, the VE testified that if the hypothetical claimant also had the non-exertional impairments found in the medical assessment prepared by Plaintiff's psychiatrist, she would not be able to work in any job. Tr. 59. The VE also testified that if the hypothetical claimant had only the physical impairment found in a medical assessment prepared by Plaintiff's treating physician, she would not be able to work. Tr. 60-1.

### C. Medical records

The record before the ALJ includes Plaintiff's medical records evidence, which the Court has carefully reviewed. I address the medical record evidence as it is relevant to the issues addressed below.

### D. The ALJ's decision

As noted, in his written decision, the ALJ concluded that Plaintiff is not disabled. Tr. 18-31. The ALJ first found that Plaintiff has not engaged in substantial gainful activity since January 1, 2012, thus the decision addresses the period commencing January 1, 2012, to the date of the decision. Tr. 20. Next, the ALJ found that Plaintiff has

5

the severe impairments of depressive disorder, anxiety disorder, and degenerative disc disease, but she does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 20-1.

The ALJ then determined Plaintiff has the residual functional capacity (RFC) to perform a partial range of light work. Tr. 24. Specifically, the ALJ found Plaintiff can:

> sit for up to six hours in an eight hour workday. She can stand and/or walk for up to six hours in an eight hour workday. She can lift, carry, push and/or pull up to 10 pounds frequently and 20 pounds occasionally. The claimant can occasionally stoop, kneel, crouch and/or crawl. She can occasionally climb ramps and stairs. However, she can never: (1) climb ladders, ropes, or scaffolds; (ii) work in proximity to moving, mechanical parts; (iii) work in proximity to high exposed places; or (iv) be exposed to other workplace hazards that are not readily apparent. In addition, the claimant is limited to occupations which require no more than the basic demands of unskilled work in that she can: (i) understand, remember, and carry out short and simple instructions; (ii) respond appropriately to supervision; (iii) interact appropriately with co-workers; and (iv) respond appropriately to changes in routine work settings. The claimant is further limited to occupations in which the principal measure of performance is not based on production quotas or production goals. Finally, the claimant is limited to occupations in which she has only occasional interaction with supervisors, co-workers and the public.

Tr. 24-5. The ALJ also found that Plaintiff is not able to communicate in English. Tr. 29. Applying these limitations, the ALJ found that Plaintiff cannot perform her past relevant work, but is not disabled because she is capable of performing other jobs existing in significant numbers in the national economy. Tr. 28-30.

### III. Analysis

In evaluating a claim for disability benefits, the ALJ must follow the five steps set forth in 20 C.F.R. §§ 416.920(a) and 404.1520:

6

      1.    Is the claimant performing substantial gainful activity? If not, the ALJ next determines;

      2.    Does the claimant have one or more severe impairment? If the claimant does, the ALJ next considers;

      3.    Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, claimant is disabled; if not, the ALJ must determine claimant's RFC; and then determine;

      4.    Based on the RFC, can claimant perform her past relevant work? If so, she is not disabled. If she cannot perform her past relevant work, the ALJ must finally determine;

      5.    Whether, based on her age, education, and work experience, and the RFC, can claimant perform other work of the sort found in the national economy. If so, claimant is not disabled. If not, claimant is disabled and entitled to benefits.

*Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

In reviewing the ALJ's decision, the Court must consider the record as whole and determine whether the ALJ applied the correct legal standard, and whether his findings of fact are supported by substantial evidence in the record. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips,* 357 F.3d at 1240, n. 8 (citation omitted). The substantial evidence standard does not permit a reviewing court to consider only those parts of the record that support the ALJ; the court must view the entire record and also consider evidence which detracts from the evidence relied on by the ALJ. *Mackie v. Astrue*, No. 1:07-cv-00098-MP-WCS, 2008 WL 719210, at * 1 (N.D. Fla. Mar. 11, 2008).

While the Court applies a presumption in favor of the ALJ's finding of fact, no such presumption applies to the ALJ's legal conclusions. Thus, the Court must reverse if the ALJ incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine whether the law was properly applied. *Perez v. Comm'r of Soc. Sec.*, No. 6:06-CV-1648-ORL-19KRS, 2008 WL 191036, * 5 (M.D. Fla. Jan. 22, 2008). The ALJ's failure to specify the weight given to evidence contrary to his decision, or failure to give the reason for discrediting evidence, is reversible error. *Hart v. Astrue*, No. 3:10-cv-531-J-TEM, 2011 WL 4356149, * 5 (M.D.Fla. Sept. 19, 2011). The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of the ALJ, with or without remand. *Perez*, 2008 WL 191036, * 5; 42 U.S.C. §405(g).

Some of the ALJ's findings here are not in dispute. There is no dispute that Plaintiff has not engaged in substantial gainful employment since January 1, 2012. Moreover, Plaintiff does not dispute that her impairments or combination of impairments do not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Rather, Plaintiff challenges: (1) the ALJ's failure to weigh the medical opinions of Dr. Polanco, (2) the weights given to the medical opinions of two treating physicians, and (3) the ALJ's credibility assessment of Plaintiff. [DE 20, pp. 6-22]. Plaintiff asserts the ALJ's errors resulted in a RFC that is not supported by substantial evidence, and that the application of that RFC resulted in the incorrect determination that she is not disabled.

The RFC is an assessment by the ALJ of a claimant's ability to work despite her impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). In determining

the RFC, the ALJ must consider all the relevant evidence. *Id.* The focus of the RFC is on doctors' evaluations of the claimant's condition and the medical consequences thereof. *Tillman v. Comm. of Soc. Sec.*, Case No. 6:12-cv-969-Orl-22DAB, 2013 WL 4014979, *3 (Aug. 6, 2013 M.D. Fla). I find that the ALJ's decision does not provide sufficient reasoning to support the RFC and I therefore recommend that the Court remand this matter for further consideration.

### A. The ALJ erred in weighing the medical opinions

Plaintiff challenges the weight given by the ALJ to the opinions of some of her treating physicians and the State consultative physicians. [DE 20, pp. 6-15]. "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011).

#### i. treating physicians

Although the ALJ generally summarized the treatment records of two of Plaintiff's treating physicians, Dr. Jorge Venereo, a neurologist, and Dr. Emiliana Arocha, a psychiatrist, he weighed only the opinions set forth in the medical source statement each provided. Tr. 26-8. The ALJ found that Dr. Venereo's opinion was "of little probative value," Tr. 27, and Dr. Arocha's opinion was "overly dire and of little probative value." Tr. 28. Additionally, the ALJ did not assign any weight to the opinions of Dr. Roberto Polanco, Plaintiff's pain management treating physician.

When the ALJ makes the RFC assessment she must give "[s]ubstantial weight . . . to the opinion, diagnosis and medical evidence of a treating physician unless there is

good cause to do otherwise." *Tillman*, 2013 WL 4014979, *3. "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (citation omitted). The ALJ must clearly articulate her reasoning when giving a treating physician's opinion less than substantial weight. *Id.* "[W]here medical evidence does not conclusively counter the treating physician's opinion, and no other good cause is presented, the Commissioner cannot discount the treating doctor's opinion." *Dobson v. Colvin*, No. 6:13-CV-01434, 2014 WL 6432855, * 7 (N.D. Ala. Nov. 14, 2014).

  a. **Dr. Jorge Venereo and Dr. Emiliana Arocha**

Dr. Venereo, an internist, treated Plaintiff in 2012 and 2013, and prepared two medical assessments of Plaintiff's ability to do work-related activity, dated May 2, 2012, and October 23, 2013. Tr. 512-18, 634-9.[4] In both assessments, Dr. Venereo found that Plaintiff had significantly more severe physical impairments than are reflected in the RFC. Tr. 512-28, 634-9. Dr. Arocha, a psychiatrist, treated Plaintiff from 2010 through the date of hearing in late 2013. Tr. 382-96, 509-11, 532-40, 566-83. On September 24, 2013, about a month before the hearing, Dr. Arocha prepared a medical assessment of Plaintiff's ability to do work-related activities, finding that Plaintiff had poor ability to make any occupational adjustments, and poor to no ability to make performance or personal or social adjustments in the work place. Tr. 582-3.

---

4 The supporting treatment records are at Tr. 640-82.

Regarding these providers, Plaintiff claims the ALJ failed to: (1) weigh the entirety of the opinions of Drs. Venereo and Arocha [DE 20, p. 8-9], (2) properly articulate a weight for the opinions [*Id.* at 9-11], and (3) accord controlling weight to the treating physician's opinions. [*Id.* at pp. 11-4].

First, as for Drs. Venereo and Arocha, the ALJ weighed only their medical source statements, not their treatment notes. Tr. 26-8. This was error. "Medical opinions" include a medical provider's treatment notes. *Winschel*, 631 F.3d at 1179. On remand, the ALJ should consider the doctor's treatment notes as well as the medical source statements and weigh all of the opinions.

Second, although the ALJ critiqued the opinions of Drs. Venereo and Arocha, he did not unambiguously state the weight he gave those opinions. Rather he wrote that Dr. Venereo's opinion was not entitled to controlling weight, Dr. Arocha's opinion was "overly dire," and both opinions had "little probative value." Tr. 27-8. Had the ALJ said that he gave those opinions a particular weight, such as "some weight", "little weight" or "no weight" this would have been clear. Instead, the Court must guess whether "little probative value", for example, means he disregarded that opinion in its entirety, or perhaps gave it little weight. Because the ALJ's decision does not provide the Court with sufficient information to evaluate whether the ALJ applied the correct legal analysis in weighing each opinion, and whether the ALJ's determinations are supported by substantial evidence, the Court must remand. *See Perez*, 2008 WL 191036, * 5.

Third, Plaintiff argues that the ALJ erred in not giving the opinions of these treating physicians controlling weight. Because the ALJ did not articulate the specific

weight he gave each opinion, I cannot assess whether the ALJ properly weighed these opinions.

For these reasons, I recommend that on remand the ALJ articulate a specific weight for the opinions of each of the treating physicians[5] and, if the ALJ chooses to give any of the opinions less than controlling weight, he clearly articulate his basis for doing so.

### b. Dr. Roberto Polanco

Plaintiff also challenges the ALJ's failure to weigh the opinions of Dr. Roberto Polanco, one of Plaintiff's treating physicians. [DE 20, pp. 6-7]. An ALJ's failure to state with particularity the weight given to each medical opinion is reversible error. *Caldwell v. Barnhart*, 261 Fed.Appx. 188, 190 (11th Cir. 2008). The Commissioner argues that any error is harmless. [DE 21, pp. 7-9]. However, failure to weigh medical opinion very rarely results in harmless error. *Ocasio v. Comm. of Social* Security, Case No: 6:14-cv-1635-Orl-GJK, 2016 WL 455459, * 3 (M.D. Fla. Feb. 5, 2016).

Dr. Polanco treated Plaintiff for pain from October 2012 through August 2013. Tr. 606-633. Dr. Polanco's treatment notes indicate that Plaintiff was neurologically intact and could walk without assistance, and she had significant pain in her back and lower extremities. *Id.* The ALJ mentions, without weighing, the portions of Dr. Polanco's opinion that support his RFC. [Tr. 21, 25, 27]. However, his decision does not discuss Dr. Polanco's assessment of Plaintiff's pain. Tr. 21-2.

---

[5] In weighing Dr. Venereo's opinions, the ALJ should specifically consider the fact that portions of Dr. Polanco's opinions are consistent with Dr. Venereo's evaluation of Plaintiff's physical limitations.

This is not harmless error because some of those Dr. Polanco's opinions contradict the RFC. Dr. Polanco's opinions that Plaintiff suffers from significant pain are consistent with Dr. Venereo's opinion of the extent of Plaintiff's physical limitations, and these opinions are inconsistent with the physical limitations in the RFC. As already noted, where an ALJ does not specify the weight given to evidence contrary to his decision, this is reversible error. *Hart*, 2001 WL 4356149, * 5. The Court must know what weight the ALJ gives to Dr. Polanco's opinions, so that it can determine whether substantial evidence supports the RFC. The Court cannot make that assessment here; and this is another reason why this matter should be remanded to the Commission.

## ii. State agency reviewers

Two state agency reviewers, Nancy Hinkeldey, Ph.D., and Wendy Silver, Psy.D., prepared mental residual functional capacity assessments of Plaintiff on December 19, 2011, and January 30, 2012, respectively. Tr. 70-1, 97-99. These reviewers found that Plaintiff had only mild non-exertional limitations. *Id.* Neither consultant examined Plaintiff, rather these assessments were based on a review of the records provided by Plaintiff at the time. Tr. 63-5, 90-3. In weighing opinions by medical consultants, the ALJ is required to apply a stricter standard than that applied in weighing the opinions of treating physicians. SSR 96-6p. The more attenuated the interaction between the consultant and the claimant, the strict standard the ALJ should apply. *Id.* The opinion of a State agency consultant may be given more weight than that of a treating source if the consultant's opinion "is based on a review of the complete case record that includes a medical report from a specialist in the individual's particular impairment which provides

more detailed and comprehensive information that what was available to the individual's treating source." *Id.*

The ALJ determined that the opinions of the State agency reviewers were "largely consistent with the objective evidence"; however, he did not assign a specific weight to these opinions. Tr. 28. From the non-exertional limitations in the RFC it appears that the ALJ credited the reviewers' opinions more than those of that of Dr. Arocha. The ALJ does not identify any detailed and comprehensive information available to the reviewers that was not available to Dr. Arocha, that would justify giving the reviewers opinions greater weight, as required by SSR 96-6p.

This is not surprising given that both reviewers reviewed an incomplete psychiatric treatment history. In fact, the record contains numerous additional treatment notes by Dr. Arocha and a psychosocial evaluation of Plaintiff, all of which took place after the reviewers had issued their opinions. Tr. 532-540, 553-581. Thus, the ALJ must also reweigh the State agency reviewers' opinions applying the standard set forth in SSR 96-6p, and articulate a specific weight for each opinion.

### B.  The ALJ must reevaluate his credibility determination

In crafting the RFC, the ALJ must consider a claimant's subjective testimony of pain and other symptoms when there is evidence of an underlying medical condition and (1) "objective medical evidence to confirm the severity of the alleged pain arising from that condition", or (2) the "objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). As set forth above, at the hearing Plaintiff testified

regarding the severity of her pain and depression. When, as here, a claimant provides testimony as to her subjective claim of disabling pain or other symptoms, the "ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations. . . ." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation and quotation marks omitted).

In considering Plaintiff's testimony regarding her subjective symptoms, the ALJ found that "claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible," and articulated four reasons to support of this conclusion. Tr. 26.[6]

First, the ALJ discounted Plaintiff's claim that she is unable to focus or concentrate. Tr. 26. The ALJ noted that Plaintiff maintains a blog on Cuban politics, which she testified she spends a few minutes a day updating; however, she stated to Dr. Arocha that she updates the blog constantly. The ALJ found these statements "entirely inconsistent." Tr. 26. These statements, however, are not necessarily inconsistent, particularly since Plaintiff was speaking through an interpreter; Plaintiff's statement that she updates her blog "constantly," could be consistent with her testimony that she updates it "daily" and that the updates take a few minutes.

Second, the ALJ found that Plaintiff's claim that she does not speak English fluently was not credible because she passed the U.S. citizenship test in English, and she

---

[6] Notably, in identifying alleged inconsistencies in Plaintiff's statements, the ALJ did not address the fact that her testimony at the hearing was through an interpreter. Nor did he acknowledge that, given Plaintiff's limited English skills, her statements to her medical providers were most likely made in Spanish and translated to English when the treatment notes were prepared.

15

previously worked translating medical documents from English to Spanish. Tr. 26. However, the record shows that Plaintiff used a dictionary to do her job and she was fired because her English was not good enough. Tr. 46-7. Plaintiff also conceded at the hearing that she has a stronger command of written English than spoken English. Tr. 43. Moreover, in contradiction to his discrediting the Plaintiff, the ALJ ultimately found that Plaintiff "is not able to communicate in English." [Tr. 29].

Third, the ALJ found Plaintiff's testimony that she did not attend to the routine activities of daily living to be "completely contrary" to a representation she made to a psychiatrist in May 2013 that she can complete basic livings skills on her own. Tr. 26, 558. Again, the statements are not totally inconsistent. At the hearing, Plaintiff testified that she can get herself showered, dressed, and shaved, which is consistent with the statement she made in May 2013. Tr. 44. She also stated at the hearing, however, that she did not have the desire to care for herself.

Moreover, in the same session where Plaintiff self-reported she could undertake basic living skills, the doctor noted that Plaintiff had "poor coping skills." Tr. 559. Likewise, Dr. Arocha's treatment notes from April 2013 indicate that, at that time, Plaintiff was exhibiting "psychotic or borderline psychotic process" and visual and auditory hallucinations that "interfere with day to day functioning." Tr. 568-9. These findings call into doubt Plaintiff's ability to accurately assess her coping skills in May 2013.

Finally, the ALJ relies on an opinion by Dr. Peter Millheiser, a consulting orthopedist, who briefly examined Plaintiff, to find that Plaintiff is less than credible. Tr.

26, 550-1. Dr. Millheiser opined that Plaintiff was "over exaggerated" her physical symptoms based on the results of multiple Waddell tests. Tr. 551. Dr. Millheiser also found that Plaintiff "is also extremely depressed looking, and her movements are slow and lethargic." Tr. 551. The ALJ accords Dr. Millheiser's opinion significant weight. Tr. 27.

At the hearing, the ALJ interpreted Dr. Millheiser's determination that Plaintiff was exaggerating her physical symptoms based on the Waddell tests as an opinion that Plaintiff was lying. Tr. 49. Waddell signs are a group of physical signs that may indicate a psychological component to chronic low back pain, and that are positively correlated with high scores for depression. http://en.wikipedia.org/wiki/Waddell%27s_signs. Given Plaintiff's acknowledged depressive disorder, positive Waddell signs may well be a reflection of her depression rather than deliberate untruthfulness.

Moreover, although the ALJ gives significant weight to Dr. Millheiser's determinations regarding Plaintiff's physical symptoms, he completely ignores Dr. Millheiser's corroboration of Plaintiff's severe depression. *Gay v. Astrue*, No. 3:09-cv-679-JRK, 2010 WL 3220299, * 7 n. 8 (M.D. Fla. Aug. 13, 2010) ("Although an ALJ is not required to discuss every piece of evidence in a record, an ALJ cannot pick and choose which evidence supports a decision while disregarding evidence to the contrary.").

On remand, the ALJ shall reconsider Plaintiff's credibility in light of the above discussion, after properly weighing and considering all of the medical opinions.[7]

### C.   Summary

On remand, the ALJ should weigh the opinions of Dr. Jorge Venereo, Dr. Emiliana Arocha and Dr. Roberto Polanco, as well as the state agency reviewers, and state with particularity the weight to be given to each of their opinions and the reasons therefor, as addressed in this report and recommendation. The ALJ should then consider the full medical record, as properly weighted, as well as the other evidence in the record to evaluate Plaintiff's credibility and determine the RFC, and explicitly state the basis for that determination. Applying the revised RFC, the ALJ should proceed to step five of the required analysis, to make a final determination of Plaintiff's eligibility for disability benefits.

### IV.   Recommendations

Based on the foregoing, I respectfully recommend that:

Plaintiff's Motion for Summary Judgment [DE 20], be GRANTED, and Defendant's Motion for Summary Judgment [DE 21], be DENIED, and the matter remanded for proceedings consistent with this report and recommendation.

---

[7] Because I recommend that this matter be remanded for further consideration as set forth above, and remand may result in a revised RFC, I do not reach Plaintiff's claim that the RFC is not supported by substantial evidence. [DE 20, pp. 15-8].

## V. Objections

The parties may file any written objections to this Report and Recommendation with the Honorable K. Michael Moore no later than fourteen days from the date of this report and recommendation. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Locate v. Dagger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY SUBMITTED in chambers in Miami, Florida, this 27th day of July, 2016.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable K. Michael Moore
Counsel of record